Lee Douglas CHAPMAN, Appellant,

v.

Doris Virginia CHAPMAN and John W.
Coomes, Appellees.

Court of Appeals of Kentucky.

May 18, 1973.

Rehearing Denied May 18, 1973.

D. K. Floyd, Berry & Floyd, New Castle, for appellant.

John W. Coomes, Coomes & Coomes, New Castle, for appellees.

GARDNER, Commissioner.

Lee Douglas Chapman filed suit for divorce from Doris Virginia Chapman after

some twenty years of marriage. A child, Peggy Wood, was born after the parties had been married fourteen years. At the time of marriage Douglas was in the oil distributing business and Doris was employed by a bank. Neither had any significant amount of money or other property. At the commencement of this action the parties had accumulated assets of the value of approximately $160,000, and their net worth was approximately $90,000. The chancellor ordered a division of the property allowing each party 50 percent in value. Doris was awarded custody of the child and Douglas was to pay $200 per month for the child's support. Doris was awarded $300 per month as maintenance until her death or remarriage. Lee Douglas Chapman, appellant, assigns several errors warranting discussion.

■■■ ONE. Appellant contends that Chapter 403 of the Kentucky Revised Statutes as amended in 1972 is unconstitutional as being retrospective legislation when it provides: "This Act applies to all pending actions and proceedings commenced prior to its effective date with respect to issues on which a judgment has not been entered. Pending actions for divorce or separation are deemed to have been commenced on the basis of irretrievable breakdown. Evidence adduced after the effective date of the Act shall be in compliance with this Act." It is well established that a marriage covenant is not a contract in the usual sense. It is more properly a status or relation created by contract. 16A C.J.S. Constitutional Law § 351. Long ago in Cabell v. Cabell's Administrator, 58 Ky. (1 Metc.) 319 (1858), this court said: "It has generally been considered by the courts of this country, federal and state, that marriage, though in some respects a contract, is not within the constitutional interdiction of legislative acts impairing the obligation of contracts." Cf. Trustees of Dartmouth College v. Woodward, 17 U.S. (4 Wheaton) 518, 4 L.Ed. 629; Maguire v. Maguire, 37 Ky. (7 Dana) 181. We do not believe there was a constitutional barrier

to the legislature's right to enact a law affecting the so-called marriage contract. There were no property rights in the usual sense violated. Questions involving marriage dissolution, distribution of property, maintenance and custody of children cannot be determined at the time of the marriage.

TWO. Appellant argues that on the question of alimony or maintenance for appellee his proof was directed toward fault on the part of appellee (as provided under the existing law) rather than toward the question of whether the child prevented appellee from working. He points out that the chancellor allowed maintenance on the basis of appellee's being unable to support herself because of being tied down with the child. In his conclusions of law the chancellor stated that Doris " * * * is presently unable to support herself through appropriate employment due to the fact that she is the custodian of the child of this marriage, Peggy Wood Chapman, whose asthmatic condition is such that it is appropriate that the defendant custodian not be required to seek employment outside the home. Thus, the plaintiff Lee Douglas Chapman is ordered to provide *maintenance* to the defendant pursuant to Section 10 of Senate Bill No. 133 of the 1972 General Assembly, in the amount of three hundred ($300.00) dollars per month until her death or remarriage whichever occurs first in time."

■ KRS 403.200 (1)(b) provides that as a prerequisite to the granting of maintenance the recipient must be "unable to support himself through appropriate employment *or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home*." (emphasis added) We cannot see how appellant's having introduced proof showing fault on the part of appellee prejudiced appellant's case. If he had desired to take proof regarding the question of whether appellee's responsibility for the care of the child prevented her from seeking employ-

ment, he should have moved the court to reopen the case for that purpose. He failed to do that so the error was not preserved for appellate review.

■ We think there is merit in appellant's further contention, however, that the court erred in overruling his motion to amend the conclusions of law and judgment to provide that upon the death or emancipation of the child, or for any other reason relieving appellee of the responsibility of taking care of the child, the payments should cease. It is recalled that the maintenance award was granted because appellee as custodian of the child was prevented from seeking outside employment. We think the judgment should be amended to correct this error.

THREE. Appellant vigorously argues that appellee was at fault in causing the marital breakdown and, therefore, she was not entitled to maintenance. While it is not shown whether the chancellor considered the question of fault on the question of maintenance we believe it will be helpful to the bench and bar if this court issue a judicial determination on whether the maintenance section, KRS 403.200, requires or permits the chancellor to consider fault in awarding maintenance.

In adopting Chapter 403 of the Kentucky Revised Statutes as amended in 1972, the legislature closely followed the Uniform Marriage and Divorce Act promulgated by the National Conference of Commissioners on Uniform State Laws and Proceedings. See Handbook of the National Conference of Commissioners on Uniform State Laws (1970). Pertinent to the discussion at hand is the omission of the phrase "without regard to marital misconduct" from KRS 403.200, which reads in full as follows:

"Maintenance—Court may grant order for either spouse.—

(1) In a proceeding for dissolution of marriage or legal separation, or a proceeding for maintenance following dissolution of a marriage by a court which lacked personal jurisdiction over the absent spouse, the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:

(a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(b) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

(2) The maintenance order shall be in such amounts and for such periods of time as the court deems just, and after considering all relevant factors including:

(a) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(c) The standard of living established during the marriage;

(d) The duration of the marriage;

(e) The age, and the physical and emotional condition of the spouse seeking maintenance; and

(f) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance."

The Uniform Act, § 308(b) (which corresponds with KRS 403.200(2)), provides "The maintenance order shall be in such amounts and for such periods of time as

the court deems just, without regard to marital misconduct, and after considering all relevant factors including: * * *."

Appellant argues that by the omission of the phrase "without regard to marital misconduct" it must be presumed the legislature intended that the finding of fault be a prerequisite to an award of maintenance. The omission does not necessarily place it on the footing of an affirmative requirement as in the recently enacted divorce act of Florida (Ch. 61, Fla.Code 1971) where it is provided: "The court may consider the adultery of a spouse and the circumstances thereof in determining whether alimony shall be awarded to such spouse and the amount of alimony, if any, to be awarded to such spouse." The original Senate Bill 133 of the Kentucky Legislature contained the words "without regard to marital misconduct." These words were by amendment deleted before final passage.[1]

In further support of the argument that fault should be considered, a picture could be drawn depicting on the one side an immoral, unappreciative wife, and on the other, a blameless husband. A natural reaction to this situation would be that the husband should not be saddled with maintenance payments. It is true that seldom is one party blameless and the other without some redemptive features—but sometimes it is that way.

One arguing to the contrary would point to KRS 403.110 which provides in part:

"This chapter shall be liberally construed and applied to promote its underlying purposes, which are to:

(3) Mitigate the potential harm to the spouses and their children caused by the process of legal dissolution of marriage."

To permit evidence on the question of fault would necessarily bring into focus past conduct of the parties, with endless invectives hurled at each other—all to the lasting detriment of the parties and their children. The argument might continue by pointing out that insofar as marital dissolution and property settlement are concerned, the Act provides that misconduct is not to be considered. On the other hand, as regards child custody, misconduct necessarily plays a large part.

■ Be that as it may, it is for this court to interpret the law, not to enact legislation. It is noted that the Act presents two requisites for maintenance: One, that the spouse seeking maintenance lacks sufficient property to support himself, and two, he is unable to support himself through appropriate employment, or is the custodian of a child which prevents his seeking employment. It is plain up to this point that fault is not to be considered. The next subsection provides that the "maintenance order shall be in such amounts and for such periods of time as the court deems just, and after considering all relevant factors including: * * *." This provision throws wide open the chancellor's discretionary considerations insofar as the amount is concerned. What might be deemed "just" could very well include marital misconduct.

We are not unmindful of In re Marriage of Williams, Iowa, 199 N.W.2d 339 (1972), standing for the proposition that fault is not to be considered on the question of alimony, and In re Marriage of Bare, Iowa, 203 N.W.2d 551 (1973), where the court reaffirmed its position that fault was not to be considered in determining alimony but held that evidence of the conduct of the parties was admissible on the question of custody of children. It is noted that three justices dissented in In re Marriage of Williams, and expressed the view that fault should be a factor. It is also noted that the Iowa Code 1971, section 598.21, speaks of alimony in the broad sense of both property division and monetary payments. The Kentucky law separates the two into different sections, which might lend emphasis

to the belief that the legislature intended to make a difference.

■ What we have said is, briefly, fault is not to be considered in determining whether a spouse is entitled to maintenance but it may be considered insofar as the amount is concerned. There are so many elements entering into a determination of what is a just amount, however, that we shall not attempt to enumerate them. The Act itself names some of the elements but the list is not exclusive. It is only after the chancellor has considered all elements, including fault, that he can get the "feel" of a just award. Since the allowance was made because appellee's responsibility for caring for the child prevented her from seeking outside employment, the maintenance should continue only so long as she has that responsibility.

There appears to be no merit in appellant's other assignments of error.

The judgment is affirmed in all respects except that part dealing with maintenance, which part is reversed with directions to the chancellor to amend the judgment to provide that maintenance for appellee shall cease when appellee is no longer custodian of the child.

PALMORE, C. J., and MILLIKEN, OSBORNE, REED, STEINFELD and STEPHENSON, JJ., sitting.

All concur.