Iris B. Brastow ATWOOD, Appellant,

v.

James O. ATWOOD, Appellee.

Court of Appeals of Kentucky.

Dec. 24, 1982.

George E. Lang, Munfordville, for appellant.

Jon W. Goodman, Munfordville, for appellee.

Before HOGGE, LESTER and McDONALD, JJ.

McDONALD, Judge:

James and Iris Atwood were married in 1960 and four children were born to the marriage. One child is deceased and a second child has been emancipated. The two unemancipated children are Ann Kathleen, age 17, and Paula, age 13.

The parties were awarded a dissolution of their marriage by the Hart Circuit Court. Their marital property (including the marital residence) was sold, all debts paid, and the proceeds divided equally between the parties. Each party received the sum of $17,572.05 as marital property. In addition, appellee James Atwood was ordered to pay $75.00 per week or $37.50 each for the two minor children residing with the appellant, Iris Atwood. The older daughter, Ann, will shortly attain the age of 18; after that time appellant will receive only $37.50 per week child support for the younger daughter, Paula.

The evidence revealed that appellee earns a take-home salary in excess of $1,200 per month plus a generous monthly gasoline allowance. The trial court found appellee's true net to be in excess of $300 per week. Appellant earns a net salary of $450 per month from her job as a secretary for the Hart County Board of Education. However, she is paid only for the nine months school is in session, giving her an annual salary of $3,600 or slightly more than $300 monthly. The record shows that she worked part-time at Reeves Food Center for a brief period in addition to her regular employment; however, this supplemental part-time job was temporary and has now ended.

Appellant argues that the trial court erred by failing to award her maintenance pursuant to the provisions of K.R.S. 403.200. That statute provides:

In a proceeding for dissolution of marriage or legal separation or a proceeding for maintenance following the dissolution of a marriage by a court which lacked personal jurisdiction over the absent spouse, the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:

(a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(b) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

Both sections of the above statute must be complied with before an award of maintenance can be granted. *Inman v. Inman,* Ky.App., 578 S.W.2d 266, 270 (1979). The trial court found that the above statute and the cases cited to him did not require an order of maintenance to this appellant. We disagree.

Appellant testified that she must pay rent payments of $150 per month on the trailer in which she is living. Her other monthly expenses include an electricity bill of $60 per month, $25 for natural gas, $18.65 for telephone, $15 for water, $5 for garbage pickup, approximately $80 for gasoline, $200 for groceries, $30 for medicine for appellant, $100 for clothing, $100 for automobile repairs, and $100 for insurance. The total for the above expenses is $883.65. The trial judge found her reasonable expenses to be in the amount of $600 to $700 per month if it were not for the purchase of a 1981 automobile which appeared to be unnecessary. In addition, appellant expects to incur the expenses of providing a college education for her children, one of whom is already in college and one of whom will begin next school year. Appellant's inflated and exaggerated monthly expenses have put her in a poor light before the trial court and we admit she has lost a degree of believability with this court. Her car-related expenses, in particular, appear to be exaggerated. The trial court, however, found her reasonable monthly expenses to be $600 to $700, and we agree that this is a realistic figure. Her income of $300 per month is far less than her reasonable expenses of $600 to $700 per month, as determined by the trial court.

Appellee argues that appellant has at her disposal a salary of $450 per month, income of $203.54 from her part-time job during a two-week pay period, and child support of $325 per month. He argues, additionally, that had appellant invested $15,000 of the $17,572.05 she received as her share of the marital property in the money market at 14 percent interest, she would draw $175 per month interest. He concludes that considering all the above sources of income "during the two weeks from August 25, 1981, to September 8, 1981," appellant could have had a monthly income of $1,357.08.

Appellee's argument is not borne out by the record in this case. The evidence shows that appellant's total annual income is only $3,600 or $300 per month, that her part-time job was temporary and has now ended, that she will shortly receive only half of the $325 per month child support, and that the steadily dwindling remainder of the $17,572.05 she received is invested in a passbook account earning 5¼ percent interest. There remains at the present time approximately $10,000 in this account which appellant must still deplete for living expenses.

K.R.S. 403.200(1)(a) requires that before a spouse is entitled to maintenance he or she must lack sufficient property to provide for his reasonable needs. While there would be a reasonable expectation that the spouse entitled to maintenance would not fritter away his or her portion of the marital property and would use same properly to help provide for his needs, we will not impose on appellant a duty to invest all or nearly all of her cash portion of the marital settlement into the uninsured and speculative money market.

When the evidence shows, as it does here, that appellant cannot meet her monthly living expenses, then she is justi-

fied in expending whatever sums she must from her marital settlement. Her failure or inability to invest the money at the highest rate of interest will not be used by appellee to deprive her of the maintenance to which she is entitled under the statute. The $17,572.05 awarded appellant as marital property is simply insufficient to provide for her reasonable needs.

In *Casper v. Casper,* Ky., 510 S.W.2d 253 (1974), the former Court of Appeals interpreted K.R.S. 403.200(1)(b) to mean that a spouse would be entitled to maintenance if he is unable to support himself through appropriate employment according to the standard of living established during the marriage. The fact that appellant is capable of working and earning $300 per month does not render her able to support herself when the parties' standard of living before the separation is taken into account.

The evidence in this case showed that the parties enjoyed a rather high standard of living during the marriage. They owned a large home located on 15 acres of property with a large swimming pool. Although not wealthy, they enjoyed the material comforts of life. Appellant's present income is not sufficient to maintain her in the insect-infested trailer in which she presently lives, and is certainly not sufficient to maintain her in the style to which she became accustomed during the marriage. The fact that she is working should not be used to deny her maintenance. As was stated in *Casper, supra:* "We cannot believe the law intended the anomaly that one who cannot work at all may have the benefit of a better standard of living than one who is able to eke out the bare necessities of life." 510 S.W.2d at 255.

It is the opinion of this Court that the provisions of K.R.S. 403.200(1)(a) and (b) are satisfied and that the trial court abused its discretion when it did not award maintenance to the appellant. This is particularly true in view of the fact that the court itself found appellant's reasonable living expenses to be twice her income and found that appellee had excess income with which to pay child support and/or maintenance.

We find the judgment based on the commissioner's findings and conclusions to be unfair. While Iris's circumstances may not be as clearly defined as either those of a scullery maid or a duchess, *see Casper,* 510 S.W.2d at 255, she faces a drastic change in the standard of living established during the marriage. Pictured for us is James riding off in the sunset not only with his new-found love but with a well-paying and secure job and half of the accumulated property after 21 years of marriage, while Iris is left holding the marital bag. She has the children to rear, a low-paying job without a future, no training for meaningful employment, no maintenance, and minimal child support. The unfairness of this situation is evident. The lowliest soldier will receive more severance or mustering-out pay than Iris.

Professor Petrilli suggests a method of determining the amount of maintenance to which a working spouse is entitled: determine what the wife would be entitled to if she were not working, then subtract from that amount her income and award her the difference. R. Petrilli, *Kentucky Family Law* § 25.10 (1981 Cum.Supp.).

We make the following suggestion, only for purposes of the trial court's consideration: Add the two net salaries, divide by two, and subtract from this result appellant's net income and the child support appellee has been ordered to pay. Then order appellee to pay as maintenance this sum or any other sum within reason consistent with the facts, for a reasonable length of time or until there is a change in circumstances because of minor children involved.

We would also point out that once a determination has been made, as here, that a party is entitled to maintenance, the court may consider fault of the parties as a factor in determining the proper amount of maintenance. *Chapman v. Chapman,* Ky., 498 S.W.2d 134 (1973). The record in this case does not reveal any evidence of fault on appellant's part but would support a finding that the appellee has been at fault.

We recognize and sympathize with appellant's desire to provide a college edu-

cation for her children and would hope that both parties would provide what financial support they are able to for their children to achieve this goal. However, since appellee is under no legal duty to support the children beyond their eighteenth birthdays, future college expenses the children may incur are not relevant in determining the amount of maintenance to which appellant is entitled.

The judgment of the Hart Circuit Court is hereby reversed and remanded with directions that the court award maintenance to appellant consistent with K.R.S. 403.200.

HOGGE, J., concurs in result only.

LESTER, J., concurs.